```
IN THE UNITED STATES DISTRICT COURT FOR THE
         EASTERN DISTRICT OF OKLAHOMA

AGAPE FLIGHTS, INC.,                    )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )    No. CIV-09-492-FHS
                                        )
COVINGTON AIRCRAFT ENGINES,INC.;        )
PRATT & WHITNEY CANADA                  )
CORPORATION; HAMILTON SUNDSTRAND        )
CORPORATION; KANSAS AVIATION OF         )
INDEPENDENCE, LLC; and JOHN DOE         )
DEFENDANTS 2-25,                        )
                                        )
        Defendants.                     )
                                        )
and                                     )
                                        )
PRATT & WHITNEY CANADA                  )
CORPORATION and HAMILTON                )
SUNDSTRAND CORPORATION;                 )
                                        )
        Third Party Plaintiffs,         )
                                        )
v.                                      )
                                        )
KANSAS AVIATION OF INDEPENDENCE,        )
LLC and BANYAN AIR SERVICE, INC.,       )
                                        )
        Third Party Defendants.         )
```

## OPINION AND ORDER

Defendant/Third Party Defendant, Kansas Aviation of Independence, LLC, ("Kansas Aviation"), has filed a Motion to Dismiss (Dkt. No. 90) pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. Plaintiff, Agape Flights, Inc. ("Agape"), Defendant/Third Party Plaintiff, Covington Aircraft Engines, Inc. ("Covington"), and Defendants/Third Party Plaintiffs, Pratt & Whitney Canada

1

Corporation ("Pratt & Whitney") and Hamilton Sundstrand Corporation ("Sundstrand"), have filed their responses in opposition to Kansas Aviation's motion (Dkt. Nos. 102, 100, and 104, respectively). On August 12, 2010, the Court held a hearing on this matter and heard the arguments of counsel. Having considered the written submissions of the parties and considered the arguments of counsel, the Court finds Kansas Aviation's Motion to Dismiss (Dkt. No. 90) should be denied as this Court determines the exercise of personal jurisdiction over Kansas Aviation is appropriate.

**FACTUAL BACKGROUND**

This action arises out of the crash of a Cessna Model 208B aircraft, U.S. Registration No. N954PA (the "Aircraft"), on December 20, 2007, in the ocean waters near the Bahamas. The Aircraft was owned and operated by Agape, a Florida corporation with its principal place of business in Venice, Florida. At the time of the crash, the Aircraft was being powered by a PT6A-114A engine, Serial No. PCE-17014 (the "Engine"), which Agape had rented from Covington pursuant to a November 7, 2007, Engine Rental Agreement. Pratt & Whitney is the manufacturer of the Aircraft's Engine and Sundstrand is the manufacturer of the Fuel Pump, Part No. 025323-150, Serial No. 839 ("Fuel Pump"), which was part of the Aircraft's Engine. In its Amended Complaint, Agape contends the crash and resultant destruction of the Aircraft was caused by the "defective and unserviceable condition of the Engine, including the fuel pump installed in the Engine." Amended Complaint (Dkt. No. 60), ¶ 13. In particular, Agape's investigation has led it to conclude that the crash occurred as a result of an in-flight power loss resulting from the Fuel Pump drive shaft splines being severely worn. Agape seeks to recover from Covington, Pratt & Whitney, Sundstrand, and Kansas Aviation for the loss of the

Aircraft under theories of negligence, strict products liability, breach of contract, and breach of warranties. Agape's claims against Kansas Aviation are limited to negligence and breach of warranties. Pratt & Whitney and Sundstrand have asserted third-party claims against Kansas Aviation and Banyan Air Service, Inc. ("Banyan")[1] for contribution.[2]

Covington, an Oklahoma corporation with its principal place of business in Okmulgee, Oklahoma, operates a business of aircraft maintenance, repair, and overhaul. As part of its operations, Covington provides customers, such as Agape, with rental engines for their aircraft while the customer's primary engine is being serviced by Covington. As noted above, at the time of the crash on December 20, 2007, the Aircraft was being powered by the Engine, which was a rental engine Covington had provided to Agape pursuant to the November 7, 2007, Engine Rental Agreement.

---

[1] The claims against Banyan arise out of Banyan's servicing of the Engine in Florida during the summer of 2007, while the Engine was being leased by Cap Cana, S.A. ("Cap Cana"), pursuant to an Engine Rental Agreement with Covington. After the Cap Cana lease terminated, the Engine was returned to Covington and eventually placed in Agape's plane in November 2007. Banyan has filed a separate Motion to Dismiss (Dkt. No. 88) for lack of personal jurisdiction. Banyan's motion is not at issue as the Court has allowed the parties to conduct limited jurisdictional discovery, with supplemental briefs placing the motion at issue in November.

[2] Although it has responded to Kansas Aviation's Motion to Dismiss, Covington has not properly asserted any claims against Kansas Aviation or, for that matter, Banyan. The parties proceeded at the hearing as if Covington had a stake in the matter and Covington's counsel recognized the need to file a cross-claim against co-defendant Kansas Aviation and a third-party complaint against Banyan.

Prior to the Engine being placed on the Aircraft, the Engine's Fuel Pump was serviced, at the request of Covington, by Kansas Aviation, a Kansas corporation with its principal place of business in Independence, Kansas. Kansas Aviation is in the business of repairing and overhauling engine accessories, including fuel pumps. On or about February 10, 2006, Kansas Aviation overhauled the Fuel Pump for Covington at its Kansas facility and shipped the Fuel Pump back to Covington in Oklahoma. Covington paid Kansas Aviation for its services and the Fuel Pump was placed on the Engine and maintained in the Covington's rental pool. The Engine, with the refurbished Fuel Pump, was ultimately placed in the Aircraft for Agape's use on or about November 7, 2007.

Agape, Covington, Pratt & Whitney, and Sundstrand have submitted the affidavit of Robert Ramirez ("Ramirez"), Covington's Parts Department Manager, in support of their contention that Kansas Aviation has the necessary minimum contacts with the State of Oklahoma to support this Court's exercise of personal jurisdiction over Kansas Aviation. Ramirez's affidavit supports the following findings: (1) Covington has had a business relationship and maintained an open account with Kansas Aviation since at least 1996 and Kansas Aviation is the primary company Covington uses to overhaul fuel pumps; (2) Kansas Aviation representatives have traveled to Oklahoma for sales and shop visits several times in the last fourteen years; (3) Kansas Aviation representatives have traveled to Oklahoma to participate in Covington's annual golf tournament several times in the last ten years; (4) Kansas Aviation regularly sends newsletters, brochures, and pricing information to Covington in Oklahoma; (5) Kansas Aviation representatives have communicated at least three times a week with Covington by email and telephone during the last ten years; (6) from 2005 through 2009 Covington has had 301

transactions with Kansas Aviation and Kansas Aviation has overhauled 159 fuel pumps for Covington during that period; (7) during the period of October 1, 2005, through May 28, 2010, Covington has paid Kansas Aviation $729,475.00 for Kansas Aviation's services; (8) the transactions between Covington and Kansas Aviation typically involve the shipment of a product back and forth between Oklahoma and Kansas; (9) Kansas Aviation does business with other Oklahoma companies, including Mint Turbine, LLC; and (10) on or about February 10, 2006, Kansas Aviation overhauled the Fuel Pump on the Engine used by Agape and provided oil to fuel heater and the flow divider on the Engine. Kansas Aviation also operates a website which allows customers to search for component parts and place orders. See Affidavit of Peter Kirchen, Exhibit B to Agape's Response to Kansas Aviation's Motion to Dismiss (Dkt. No. 102).

## ANALYSIS

The issue raised by Kansas Aviation's Motion to Dismiss (Dkt. No. 90) is whether this Court has personal jurisdiction over Kansas Aviation, a nonresident defendant/third-party defendant herein. As the parties asserting claims against Kansas Aviation, the burden of establishing such jurisdiction rests with Agape, Covington, Pratt & Whitney, and Sundstrand. Rambo v. American Southern Ins. Co., 839 F.2d 1415, 1417 (10th Cir. 1988). At this preliminary stage of the litigation, however, this burden is not a heavy one. Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000). In order to defeat a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction supported by affidavits and other materials, the parties contesting such motion "need only make a prima facie showing of personal jurisdiction." OMI Holdings, Inc. v. Royal Ins. Co. Of Canada, 149 F.3d 1086, 1091

5

(10th Cir. 1998). The Court considers the allegations of the complaint to be true to the extent they are uncontroverted by opposing affidavits. Intercon, 205 F.3d at 1247. Moreover, all factual disputes are to be resolved in favor of the parties bearing the burden of establishing personal jurisdiction. Id. If a prima facie case of personal jurisdiction is established, the opposing party may defeat such showing by presenting "a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" OMI Holdings, 149 F.3d at 1091 (quoting Burger King v. Rudzewicz, 471 U.S. 472, 477 (1985)).

In a diversity action such as the instant case, the law of the forum determines the existence of personal jurisdiction. Yarbrough v. Elmer Bunder & Assocs., 669 F.2d 614, 616 (10th Cir. 1982). Under Oklahoma law a single due process analysis is utilized to determine the extent of personal jurisdiction over a nonresident defendant. Oklahoma's long-arm statute provides that "[a] court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." Okla. Stat. Ann. tit. 12, § 2004F. The general test for determining whether a state may exercise personal jurisdiction under the federal Constitution is well-established:

> A federal court sitting in diversity 'may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state.' World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). 'The defendant's contacts with the forum State must be such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.'"' World-Wide Volkswagen, supra, 444 U.S. at 292 (quoting International Shoe, 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940))). The sufficiency of a defendant's conduct must be evaluated by

6

> examining the defendant's conduct and connections with the forum state to assess whether the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State. Hanson v. Denckla, 357 U.S. 235, 253 (1958)."

Rambo, 839 F.2d at 1417 (quoting First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc., 820 F.2d 1127, 1130-31 (10th Cir. 1987)). The nature of a defendant's contacts must be such that the defendant could reasonably anticipate being haled into court in the forum state. World-Wide Volkswagen, 444 U.S. at 297.

Two types of personal jurisdiction are recognized - specific and general. Specific jurisdiction involves a two-step analysis. First, it must be determined whether a defendant "has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King, 471 U.S. at 472 (1985)(internal quotations omitted); Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1071 (2008)(in tort cases, courts "often ask whether the nonresident defendant 'purposefully directed' its activities at the forum state"). If sufficient minimum contacts are present, the second step requires a showing that the exercise of personal jurisdiction over a defendant comports with traditional notions of "fair play and substantial justice." Burger King, 471 U.S. at 476. General jurisdiction, on the other hand, requires continuous and systematic contacts with the forum. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984). The minimum contacts analysis for general jurisdiction is more stringent than for specific jurisdiction as the contacts do not derive from the events giving rise to the suit. See Benton v. Cameco Corp., 375 F.3d 1070, 1080 (10th Cir. 2004), cert. denied, 544 U.S. 974 (2005).

7

The assertion of specific jurisdiction over Kansas Aviation is appropriate. At the heart of this litigation is Agape's claim that the crash of the Aircraft was caused by a faulty Engine, in particular, a Fuel Pump driveshaft with splines which were severely worn and corroded. This Fuel Pump had been overhauled by Kansas Aviation at its Kansas facility pursuant to a February 10, 2006, service arrangement with Covington, an Oklahoma company. Thus, it is clear that this litigation, as it applies to claims against Kansas Aviation, arises out of and relates to Kansas Aviation's activities and conduct with respect to the overhaul of the subject Fuel Pump pursuant to a specific business transaction with an Oklahoma company. Moreover, the nature of Kansas Aviation's business relationship with Covington evidences "affirmative conduct [on the part of Kansas Aviation] which allows or promotes the transaction of business within [Oklahoma]." Rambo, 839 F.2d at 1420. The February 10, 2006, overhaul of the Engine is an affirmative action on the part of Kansas Aviation to conduct business within Oklahoma, not only considered in isolation, but also in the context of the historic business relationship between Kansas Aviation and Covington dating back some fourteen years. Kansas Aviation agreed to accept the Fuel Pump for overhaul with a shipment of that Fuel Pump from Covington in Oklahoma to Kansas Aviation in Kansas. After completion of the work, Kansas Aviation shipped the Fuel Pump back to Covington in Oklahoma. Covington paid Kansas Aviation for its services. This transaction culminating in the February 10, 2006, overhaul of the Fuel Pump is sufficient evidence of affirmative conduct on the part of Kansas Aviation which promotes business in Oklahoma. Although the physical activity involved with the overhaul of the Engine did not take place in Oklahoma, the harm allegedly sustained by Agape, Covington, Pratt & Whitney, and Sundstrand results from Kansas Aviation's substantial connection with Oklahoma through its

February 10, 2006, service agreement with Covington. Under these circumstances, the Court concludes sufficient minimum contacts exist between Kansas Aviation and Oklahoma to support a finding that Kansas Aviation purposely directed its activities at Oklahoma through its business arrangement with Covington.

The Court next determines whether the exercise of jurisdiction in Oklahoma would offend "traditional notions of fair play and substantial justice." Burger King, 471 U.S. at 476. Factors to be considered with this inquiry are: (1) the burden on defendant in litigating in the forum state; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. OMI Holdings, 149 F.3d at 1095. An analysis of these factors reveals that it is reasonable to require Kansas Aviation to defend this action in this Oklahoma federal court. No apparent burden would be placed on Kansas Aviation, a bordering-state corporation, from defending the claims herein. Any conflict of laws issues can be resolved using Oklahoma choice-of-law rules. Oklahoma has an interest in resolving the underlying dispute involving allegations of substandard service and overhaul work pursuant to a business transaction with an Oklahoma company. Given the location of the crash in the waters off the Bahamas and the diverse locations of the parties[3], there is also a strong interest in avoiding multiple

---

[3] As noted, Covington is an Oklahoma corporation with its principal place of business in Okmulgee, Oklahoma, and Kansas Aviation is a Kansas corporation with its principal place of business in Independence, Kansas. Agape alleges in its Amended Complaint that Pratt & Whitney is a Nova Scotia corporation with its principal place of business in Longueuil, Quebec, Canada, and

9

forums to redress the harm alleged. Agape's choice of Oklahoma as the appropriate forum is a reasoned and legitimate attempt to obtain complete relief in the most convenient and effective forum given the fact that the parties and witnesses are from various locations. Finally, there do not appear to be any overriding substantive social policies which would be negatively impacted by litigating this matter in Oklahoma.

Consequently, the Court finds there are sufficient minimum contacts between Kansas Aviation and Oklahoma to support specific jurisdiction over Kansas Aviation in this Oklahoma federal court and the exercise of such personal jurisdiction over Kansas Aviation is reasonable in light of the circumstances of this case.

The Court also finds that Kansas Aviation's general business contacts with Covington in Oklahoma support the more stringent minimum contacts standard for general personal jurisdiction. It is true that Kansas Aviation has no offices or assets in Oklahoma, and that all work on the subject Fuel Pump was performed in Kansas. See Affidavit of Toby Lavine, President, Kansas Aviation, attached as Exhibit 1 to Kansas Aviation's Motion to Dismiss. It is also true that there is no evidence in the record that Kansas Aviation is licensed to do business in Oklahoma, recruits any employees in Oklahoma, or pays Oklahoma taxes. Kansas Aviation's long-standing and substantial business relationship with Covington, however, trumps these facts and satisfies the "continuous and systematic" threshold required for the exercise of general personal jurisdiction.

---

that Sundstrand is a Connecticut corporation with its principal place of business in Windsor Locks, Connecticut. Banyan is a Florida corporation with its principal place of business in Ft. Lauderdale, Florida.

When assessing Kansas Aviation's contacts under the general personal jurisdiction standard, the Court considers such factors as (1) whether Kansas Aviation solicits business in Oklahoma through a local office or agents; (2) whether Kansas Aviation sends agents into Oklahoma on a regular basis to solicit business; (3) the extent to which Kansas Aviation holds itself out as doing business in Oklahoma through advertisements, listings or bank accounts; and (4) the volume of business conducted in Oklahoma by Kansas Aviation. See Trierweiler v. Croxton and Trench Holding Corp., 90 F.3d 1523, 1533 (10th Cir. 1996). As established by Ramirez's affidavit, Kansas Aviation has transacted business with Covington since 1996 and has regularly sent literature, newsletters, and pricing information to Covington in Oklahoma over that period of time. Kansas Aviation employees have traveled to Oklahoma during the course of the business relationship with Covington for sales and shop visits and to participate in Covington's annual golf tournament. Most significantly, Kansas Aviation has a long-standing and substantial business history with Covington. Kansas Aviation is the primary vendor Covington uses to overhaul fuel pumps. Covington maintains an open account with Kansas Aviation. Between 2005 and 2009 Kansas Aviation and Covington have engaged in 301 transactions and Kansas Aviation has overhauled 159 fuel pumps during that period of time. Covington has paid Kansas Aviation $729,475.00 for its services. These transactions typically involve the shipment of a product back and forth between Oklahoma and Kansas, as well as regular communications between the two companies. Thus, it is abundantly clear that Kansas Aviation has "continuous and systematic" contacts with Oklahoma through its business relationship with Covington such that it would be reasonable for Kansas Aviation to anticipate being haled into an

Oklahoma court to defend itself.[4]

Based on the foregoing reasons, the Court finds that Agape, Covington, Pratt & Whitney, and Sundstrand have sustained their burden of establishing personal jurisdiction - specific and general - over Kansas Aviation. Consequently, Kansas Aviation's Motion to Dismiss (Dkt. No. 90) is denied.

It is so ordered this 7th day of September, 2010.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma

---

[4] In assessing general personal jurisdiction, the Court has focused and relied solely on Kansas Aviation's significant business relationship with Covington. Although it has not factored it into its assessment, the Court does note that Ramirez's affidavit contains additional information of non-Covington contacts with Oklahoma, i.e., that Kansas Aviation does business with other Oklahoma companies, including Mint Turbine, LLC, and that Kansas Aviation operates an interactive website that allows customers to search for, and place orders on, component parts.