IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

AGAPE FLIGHTS, INC.,                )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )   No. CIV-09-492-FHS
                                    )
COVINGTON AIRCRAFT ENGINES,INC.;    )
PRATT & WHITNEY CANADA              )
CORPORATION; HAMILTON SUNDSTRAND    )
CORPORATION; KANSAS AVIATION OF     )
INDEPENDENCE, LLC; and JOHN DOE     )
DEFENDANTS 2-25,                    )
                                    )
        Defendants.                 )
                                    )
and                                 )
                                    )
PRATT & WHITNEY CANADA              )
CORPORATION and HAMILTON            )
SUNDSTRAND CORPORATION;             )
                                    )
        Third Party Plaintiffs,     )
                                    )
v.                                  )
                                    )
KANSAS AVIATION OF INDEPENDENCE,    )
LLC.,                               )
                                    )
        Third Party Defendant.      )

## OPINION AND ORDER

This matter is before the Court on the Motions for Summary Judgment filed by Pratt & Whitney Canada Corporation ("Pratt & Whitney Canada") and Hamilton Sundstrand Corporation ("Sundstrand") with respect to the claims asserted against them by Plaintiff, Agape Flights, Inc. ("Agape"), for negligence, strict products liability, and breach of warranty arising out of a December 20, 2007, airplane crash. In their motions, both Pratt & Whitney

1

Canada and Sundstrand contend Agape's claims are barred by the General Aviation Revitalization Act of 1994 ("GARA"), 49 U.S.C. § 40101, Note. In the alternative, Pratt & Whitney Canada and Sundstrand contend Agape's tort claims are barred by Oklahoma's economic loss doctrine and that Agape's breach of warranty claim is barred by Oklahoma law. Agape has responded to the motions for summary judgment and the parties were granted an additional period of time to conduct discovery limited to the GARA defense and to file supplemental briefs. The supplemental briefs have been filed and the motions for summary judgment are ripe for ruling. Having fully reviewed the materials submitted by the parties, the Court finds Pratt & Whitney Canada's Motion for Summary Judgment (Dkt. No. 127) and Sundstrand's Motion for Summary Judgment (Dkt. No. 128) should be granted for the reasons set forth below.

## **BACKGROUND**

On December 20, 2007, a Cessna Grand Caravan Model 208B aircraft, serial number 208B0556, U.S. Registration No. N954PA (the "Aircraft") crashed in the ocean waters near the Bahamas. As a result of the crash, the Aircraft was destroyed. The Aircraft was owned and operated by Agape and it was being powered by a PT6A-114A engine, Serial No. PCE-17014 (the "Engine"), which Agape had rented from Covington Aircraft Engines, Inc. ("Covington") pursuant to a November 7, 2007, Engine Rental Agreement ("Rental Agreement"). Pratt & Whitney Canada is the manufacturer of the Aircraft's Engine and Sundstrand is the manufacturer of the Fuel Pump, Part No. 025323-150, Serial No. 839 ("Fuel Pump"), which was part of the Aircraft's Engine. In its Amended Complaint, Agape contends the crash and resultant destruction of the Aircraft were caused by the "defective and unserviceable condition of the Engine, including the fuel pump installed in the Engine." Amended Complaint (Dkt. No.

60), ¶ 13. In particular, Agape's investigation has led it to conclude that the crash occurred as a result of an in-flight power loss resulting from the Fuel Pump drive shaft splines being severely worn. Agape seeks to recover from Covington, Pratt & Whitney Canada, Sundstrand, and Kansas Aviation of Independence, LLC ("Kansas Aviation") for the loss of the Aircraft under theories of negligence, strict products liability, breach of contract, and breach of warranties.[1] In turn, Pratt & Whitney Canada and Sundstrand have asserted third-party claims against Kansas Aviation for contribution.

On December 17, 1984, Pratt & Whitney Canada sold and delivered its manufactured Engine to Cessna Aircraft Company ("Cessna"). The Engine was installed on Cessna Aircraft 208, serial 108-00001, which was subsequently sold to Air Med (Air Mediterranee) on May 26, 1986. The Fuel Pump manufactured by Sundstrand was initially installed on engine PCE 17131, which was a model PT6A-114 sold to Cessna on October 21, 1986. Pratt & Whitney Canada's engine PCE 17131, with the Fuel Pump, was installed on Cessna Model 208, serial number 20800110 with assigned US Registration No. N9642F. This aircraft, Cessna Model 208, serial number 20800110, N9642F, was issued its Standard Airworthiness Certificate by the Federal Aviation Administration ("FAA") on March 20, 1987, and it was sold to Cessna Finance on March 26, 1987. Cessna Finance leased the aircraft, Cessna Model 208, serial number 20800110, N9642F, to California Air Charter on

---

[1] On or about February 10, 2006, Kansas Aviation overhauled the Fuel Pump for Covington. The Fuel Pump was placed on the Engine and maintained in Covington's rental pool until the Engine, with the refurbished Fuel Pump, was placed in the Aircraft for Agape's use pursuant to the Rental Agreement between Agape and Covington. Agape's claims against Kansas Aviation are limited to negligence and breach of warranties.

3

February 20, 1987. There are no records indicating that Pratt & Whitney Canada provided repair and/or overhaul services on the Fuel Pump since it was first installed on engine PCE 17131 in 1986.

Nearly twenty-three (23) years after the Engine was sold and delivered to Cessna, and more than twenty (20) years after the first sale of the aircraft/engine on which the Fuel Pump was installed, the Engine, with the Fuel Pump, was rented by Agape from Covington pursuant to the November 7, 2007, Rental Agreement. Following the December 7, 2007, crash the Engine was inspected and the Engine's fuel pump was identified by serial number 839, with pump assembly housing number S661, as being the Fuel Pump manufactured by Sundstrand in 1986. At the time of the crash, the Aircraft was not being used for scheduled passenger-carrying operations. The Aircraft was a certified general aviation aircraft with a seating capacity of eleven (11) seats and the FAA had issued a Standard Airworthiness Certificate for the Aircraft on July 19, 1996.

The parties to the Engine Rental Agreement were Agape and Covington. Pratt & Whitney Canada was not a party to the Engine Rental Agreement and had no role in drafting or approving the language contained in the document. Pratt & Whitney did not make any warranties regarding rental engines owned by Covington, including the Engine placed in Agape's Aircraft, and it has no obligations or responsibilities to Covington or its lessee, Agape, to repair the Engine or its component parts. The inclusion of language in the Rental Agreement suggesting Pratt & Whitney is responsible for repairs or replacement of parts of the Engine was made in error and without the approval or assent of Pratt & Whitney

4

Canada.[2]

**ANALYSIS**

In 1994, Congress enacted GARA in order to address problems affecting the general aviation industry, in particular, "the enormous product liability costs that our tort system had imposed upon manufacturers of general aviation aircraft." Lyon v. Augusta S.P.A, 252 F.3d 1078, 1084 (9th Cir. 2001). Part of Congress's concern was that aircraft "manufacturers were being driven to the wall because, among other things, of the long tail of liability attached to those aircraft which could be used for decades after they were first manufactured and sold." Id. (citing H.R.Rep. No. 103-525, pt I, at 1-4 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1638, 1638-41). Thus, GARA established an 18-year statute of repose for a civil action against an aircraft manufacturer or the manufacturer of any component, system, or other part of the aircraft. See Burton v. Twin Commander Aircraft, LLC, 221 P.3d 290, 294 (Wash.Ct.App. 2009)("GARA is a mandatory statute of repose that bars lawsuits against the manufacturer of the aircraft or the manufacturer of any new component or, system, or other part of the aircraft from accidents that occurred more than 18 years after the initial transfer of the aircraft."). GARA's statute of repose provides:

> Except as provided in subsection (b), no civil action for damages for death or injury to persons or damages to property arising out of an accident involving a general

---

[2] The second sentence of paragraph 8 of the Engine Rental Agreement provides "P&WC shall be responsible for repairs or replacement of the engine in case of damage resulting from normal operation and in accordance with applicable manuals and operating instructions, and without fault or negligence of the customer."

5

aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred-

(1) after the applicable limitations period beginning on-

(A) the date of delivery of the aircraft to its first purchaser or lessee, if delivered directly from the manufacturer; or

(B) the date of first delivery of the aircraft to a person engaged in the business of selling or leasing such aircraft . . .

GARA § 2(a). The term "general aviation aircraft" is defeined under GARA as:

> Any aircraft for which a type certificate or an airworthiness certificate has been issued by the Administrator of the Federal Aviation Administration ("FAA"), which, at the time such certificate was originally issued, had a maximum seating capacity of fewer than 20 passengers, and which was not, at the time of the accident, engaged in scheduled passenger-carrying operations as defined under regulations in effect under Part A of subtitle VII of title 49, United States Code [49 U.S.C.A. § 40101 et seq.], at the time of the accident.

GARA § 2(c). The "applicable limitation period" set forth under section 2(a) is defined as "18 years with respect to general aviation aircraft and the components, systems, subassemblies, and other parts of the such aircraft." GARA § 3(3). GARA also "supersedes any State law to the extent that such law permits a civil action . . . to be brought after the applicable limitation period . . . ." GARA § 2(d).

Both Pratt & Whitney Canada and Sundstrand contend the application of GARA's 18-year statute of repose bars all claims

6

asserted against them by Agape. The burden of proof rests with Pratt & Whitney Canada and Sundstrand to show that an affirmative defense such as GARA's statute of repose applies to the facts at hand. South Side Trust and Sav. Bank of Peoria v. Mitsubishi Heavy Indust., Ltd., 927 N.E.2d 179, 193 (Ill.Ct.App. 2010)(a defendant has the burden of showing that the affirmative defense of the statute of repose under GARA applies and, if the showing is made, "then the plaintiff has the burden to show facts that operate to toll or create an exception to the repose period."); see also Koch v. Shell Oil Co., 52 F.3d 878, 880 (10th Cir. 1995)(defendants in product liability action under Kansas law have the burden of proof on the affirmative defense of the statute of repose and "plaintiff has the burden of showing that his action falls within one of the exceptions to the statute."). From a review of the undisputed facts, it is clear that GARA applies in this action with respect to the claims against both Pratt & Whitney Canada and Sundstrand. First, it is undisputed that the Aircraft qualifies as a "general aviation aircraft" under GARA as it was certified by the FAA to carry a maximum of 11 passengers and, at the time of the accident, it was not being used for scheduled passenger-carrying operations. Second, it is undisputed that Sundstrand, as the manufacturer of the Fuel Pump on the Aircraft, and Pratt & Whitney Canada, as the manufacturer of the Engine on the Aircraft, are entitled to the protections afforded under GARA.³ Finally, it is undisputed that Pratt & Whitney Canada sold and delivered the Engine to Cessna on

---

³ Agape had initially argued in its Response to Sundstrand's Motion for Summary Judgment (Dkt. No. 142) that Sundstrand was not entitled to rely on the 18-year statute of repose because it had not established that it was a "successor manufacturer" to the predecessor manufacturer of the fuel pump, Sundstrand Corporation. In its Supplemental Response (Dkt. No. 197), however, Agape has abandoned this position and states that Sundstrand is the successor manufacturer to Sundstrand Corporation.

December 17, 1984, more than 23 years prior to the December 20, 2007, accident. The Engine was then installed on Cessna Aircraft 208, serial 108-00001, which was subsequently sold to Air Med on May 26, 1986, more than 21 years prior to the accident. With respect to Sundstrand, the undisputed evidence establishes that the aircraft on which the Fuel Pump was installed was sold to Cessna Finance, a company in the business of leasing aircraft, on March 26, 1987, more than 20 years prior to the accident. Thus, the undisputed evidence establishes that the 18-year statute of repose under GARA applies to the claims asserted by Agape against Pratt & Whitney Canada and Sundstrand.

Rather than contesting the application of GARA's 18-year statute of repose, Agape contends its claims against Pratt & Whitney Canada and Sundstrand should be allowed to go forward because this case falls within GARA's "warranty exception" and "rolling provision." As to the "warranty exception," GARA's statute of repose would not apply "to an action brought under a written warranty enforceable under law." GARA § 2(b)(4). In asserting this exception, Agape bears the burden of proving the exception applies. <u>Bianco v. Cessna Aircraft Co.</u>, 2004 WL 3185847 *3 (Ariz. Ct. App. 2004). Agape has failed to satisfy its burden of establishing a written warranty made by either Pratt & Whitney Canada or Sundstrand. There is simply no evidence of any written warranty having been made to Agape by either Pratt & Whitney Canada or Sundstrand with respect to the Engine or Fuel Pump. Agape's reliance on the warranty language of the Rental Agreement is misplaced. The Rental Agreement between Agape and Covington provides:

> WARRANTY: [Covington] warrants that at the time of delivery the rental engine will in flight-worthy condition and conform to applicable Pratt & Whitney

8

Canada Corporation specifications. Pratt & Whitney Canada Corporation shall be responsible for repairs or replacement of the engine in case of damage resulting from normal operation and accordance with applicable manuals and operating instructions, and without fault or negligence of the customer [Agape].

Rental Agreement, ¶ 8. Agape combines this language and Oklahoma's adoption of a Uniform Commercial Code provision under Okla.Stat.tit. 12A, § 2A-531[4], to conclude that it has a breach of warranty claim against both Pratt & Whitney Canada and Sundstrand

---

[4] This section of Oklahoma law reads:

> (1) If a third party so deals with goods that have been identified to a lease contract as to cause actionable injury to a party to a lease contract:
>
> (a) the lessor has a right of action against the third party, and
> (b) the lessee also has the right of action against the third party if the lessee;
>     (i) has a security interest in the goods;
>     (ii) has a insurable interest in the goods; or
>     (iii) bears the risk of loss under the lease contract or has since the injury assumed that risk as against the lessor and the goods have been converted or destroyed.
>
> (2) If at the time of the injury the party/plaintiff did not bear the risk of loss as against the other party to the lease contract and there is no arrangement between them for disposing of the recovery, his suit or settlement, subject to his own interest, is as a fiduciary for the other party to the lease contract.
> (3) Either party without consent of the other party may sue for the benefit of which it may concern.

for the failure of the Engine.  The Court disagrees.  These provisions do not establish the required written warranty for the application of the GARA warranty exception.  The warranty language of the Rental Agreement does not constitute a written warranty issued by Pratt & Whitney Canada as the parties to such agreement are Agape and Covington - Pratt & Whitney Canada is simply not a party to the lease agreement.  It is undisputed that the warranty language of the Rental Agreement suggesting some obligation on the part of Pratt & Whitney Canada was included in error and without the approval or assent of Pratt & Whitney Canada.  To the extent this language can be interpreted to infer a warranty running from Pratt & Whitney Canada to Agape, it falls well short of the required written warranty between the affected parties to trigger GARA's warranty exception under § 2(d).  Moreover, Agape's reliance on the application of section 2A-531 does not establish the necessary written warranty.  Even assuming such state law provision creates a right of action against both Pratt & Whitney Canada and Sundstrand for breach of warranty, any inferred warranty claim against a third party under Oklahoma law is not a written warranty claim necessary for the application of the GARA warranty exception. GARA "supersedes any State law to the extent that such law permits a civil action," GARA § 2(d), and in the absence of any written warranty running between Agape and either Pratt & Whitney Canada and Sundstrand, the warranty exception under GARA cannot be triggered.  In sum, the Court finds that Agape has failed to sustain its burden of establishing the existence of GARA's warranty exception.

Agape also attempts to rely on GARA's "rolling provision" that restarts the 18-year statute of repose against the manufacturer of any new or replacement part.  GARA's "rolling provision" provides:

> with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition.

GARA § 2(a)(2). Agape contends Pratt & Whitney Canada and Sundstrand bear the burden of proof with regard to this "rolling provision." The Court disagrees. While Pratt & Whitney Canada and Sundstrand do indeed bear the burden of proof on the affirmative defense of GARA's statute of repose, see South Side Trust, 927 N.E.2d at 193; Koch, 52 F.3d at 880, Agape ultimately bears the burden of proof with respect to this alleged exception or restarting of the limitation period. Willett v. Cessna Aircraft Co., 851 N.E.2d 626, 636 (Ill.Ct.App. 2006)("We find it to be a reasonable interpretation of [GARA] that plaintiff herein had the burden of showing that the general repose period for the aircraft as a whole was tolled or reset by the installation of a new replacement wye, triggering the part-specific repose period."). Thus, this "rolling provision" applies if Agape "can show that a new item replaced an item either originally in the aircraft or added to the aircraft and the new item was also a cause of the claimed damages." South Side Trust, 927 N.E.2d at 193. Based on the record before it, the Court concludes Agape has not sustained its burden in this respect.

With respect to Sundstrand, Agape argues that there is a significant issue of material fact as to whether the Fuel Pump's drive gear has been installed within 18 years of the November 20, 2007, crash. This argument rests on Agape's contention that Sundstrand has not established that the drive gear is the same drive gear that was originally installed in the Fuel Pump. In its

Supplemental Response (Dkt. No. 197), Agape sets forth the following facts in support of its position: the Fuel Pump is a power driven rotary pump with a drive gear, that includes splines; Sundstrand is the only company that makes the gear set for the fuel pump model in question; Sundstrand was concerned about the splines on the drive gear being returned for service with excessive wear; rotational play of the drive gear and coupling can lead to intermittent or lack of operation of the fuel pump; Sundstrand recommends overhauls of the fuel pump every 3600 hours and the Fuel Pump in question had 9723.3 hours on it since it was new; Sundstrand placed wear tolerances for the fuel pump's drive gear splines in its overhaul manuals; the Fuel Pump was overhauled by Kansas Aviation on or about February 9, 2006, in accordance with Sundstrand's Overhaul Manual 73-10-02, Revision No. 12, dated June 1, 1997; neither Sundstrand nor Pratt & Whitney Canada knows if the drive gear on the Fuel Pump had been replaced; no separate log books are kept for fuel pumps and records for fuel pumps are kept in the engine log books; the Fuel Pump did not operate at the time of the crash because of wear on the splines of the drive gear; Covington does not know if the drive gear was ever replaced and it does not know the history of the Fuel Pump from 1987 to February 2006; and Pratt & Whitney Canada was not able to identify the driveshaft serial number on the Fuel Pump after the crash. None of these facts, however, establish that the drive gear on the Fuel Pump was actually replaced at any point within 18 years of the November 20, 2007, crash. Agape's factual assertions are framed from the vantage point of the burden of proof resting on Sundstrand to prove that the gear drive is the same as the original gear drive placed on the Fuel Pump in 1986. At best, Agape's facts suggest that the drive gear might have been replaced or should have been replaced given historical data of wearing of the drive gear splines. There is no maintenance record or other similar document,

however, establishing that the drive gear was indeed replaced with the 18-year period before the date of the crash.[5] The burden to come forward with such evidence rests with Agape. Absent such evidence, the Court must conclude that Agape has failed to sustain its burden of establishing that GARA's "rolling provision" applies to reset the statute of repose herein as to Sundstrand.

Turning to Pratt & Whitney Canada and Agape's argument for the resetting of GARA's statute of repose, the Court likewise finds Agape has failed to sustain its burden of proof with respect to the "rolling provision" as to Pratt & Whitney Canada. Agape argues that a 2006 revision to Pratt & Whitney Canada's maintenance manual and a similar 2005 Service Bulletin No. 1645 constitute a "part" that restarts the limitation period under GARA's "rolling provision." Pratt & Whitney Canada's maintenance manual was originally published October 1, 1989, and provided for a procedure for fuel pump coupling in-situ inspection. In a change dated June 16, 2006, Pratt & Whitney Canada issued a revised manual with a more detailed procedure for the in-situ fuel pump inspection. Pratt & Whitney Canada also issued Service Bulletin No. 1645 on December 23, 2005, dealing with the inspection of the fuel pump coupling shaft splines. Agape contends the June 16, 2006,

---

[5] The document submitted in support of Kansas Aviation's February 9, 2006, overhaul of the Fuel Pump is entitled an Authorized Release Certificate and it is attached to the affidavit of Peter T. Kirchen (Exhibit 2 of Agape's Response Brief (Dkt. No. 142)). This document only reflects an overhaul of the Fuel Pump in accordance with Sundstrand's 1997 version of its overhaul manual. No details are provided in this document, or any other document, as to the replacement of any parts. Indeed, Agape acknowledges this lack of specificity when its states in its response brief that "[t]here is no evidence in the record as to whether the overhaul would have included replacement of the coupling shaft for the engine driven fuel pump." Agape's Response Brief (Dkt. No. 142), p. 8.

13

maintenance manual revision, as well as Service Bulletin No. 1645, constitute a "part" for purposes of GARA's "rolling provision" and, as a consequence, the limitation period was started within 18 years of the November 20, 2007, crash.  The Court disagrees and finds neither the maintenance manual nor Service Bulletin No. 1645 constitute a "part" under GARA's "rolling provision."

In <u>Burton</u>, the court concluded that a service bulletin calling for a one-time close visual inspection of the rudder cap, top rudder rib, and forward rudder spar of a twin engine airplane did not constitute a "part" for purposes of the application of GARA's "rolling provision."  <u>Burton</u>, 221 P.3d at 295-97.  In reaching this conclusion, the <u>Burton</u> court distinguished service bulletins, which could be considered parts of maintenance manuals and are not required to operate the aircraft, from flight manuals, which are required to be onboard aircraft.  <u>Id</u>. at 296.  The <u>Burton</u> court rejected the plaintiff's attempt to avoid the GARA statute of repose by arguing that the service bulletin, which amended the maintenance manual, was a "part" of the aircraft and it cited with approval the following language:

> To hold that [the defendant] should be liable because its manuals issued within the period of repose did not provide an adequate means of correcting the design flaw of the critical component, would be to circumvent the statute of repose by providing a back door to sue for the design flaw ostensibly not for the design flaw itself; but for the failure of the manuals to adequately correct the flaw.  The result would be the evisceration of the statute of repose.

<u>Butchkosky v. Enstrom Helicopter Corp.</u>, 855 F.Supp. 1251, 1257 (S.D. Fla. 1993); <u>see</u> <u>also</u> <u>Moyer v. Teledyne Cont'l Motors, Inc.</u>, 979 A.2d 336, 344 (Pa.Super.Ct. 2009)("given the continual issuance of service bulletins pertaining to a variety of topics, if the

statute of repose were triggered every time a service bulletin was issued, the intent of GARA would be eviscerated."). Likewise, to accept Agape's argument herein that the 2006 maintenance manual revision and Service Bulletin No. 1645 are new "parts" that restart GARA's limitation period would be to eviscerate the intent of GARA in providing protection to general aviation industry manufacturers, such as Pratt & Whitney Canada, from the long tail of liability associated with products liability actions. Agape's assertion of fault associated with the revised procedures for inspection of the Fuel Pump's drive gear is merely an attempt to circumvent GARA's statute of repose by bringing suit not for the alleged design flaw inherent in the Fuel Pump, but rather, for a failure of the revised maintenance manual and Service Bulletin No. 1645 to adequately address the defect. The Court therefore concludes that Pratt & Whitey Canada's revised maintenance manual and its Service Bulletin No. 1645 are not a "part" for purposes of GARA's "rolling provision." Thus, Agape has not sustained its burden of proving that GARA's statute or repose was restarted as to Pratt & Whitney Canada so as to bring this action within the 18-year statute of repose.

Based on the foregoing reasons, the Pratt & Whitney Canada's Motion for Summary Judgment (Dkt. No. 127) and Sundstrand's Motion for Summary Judgment (Dkt. No. 128) are granted[6] and all claims asserted by Agape against Pratt & Whitney Canada and Sundstrand are

---

[6] Having found that GARA bars all claims asserted by Agape, the Court need not address the alternative arguments by Pratt & Whitney Canada and Sundstrand that Agape's tort claims are barred by Oklahoma's economic loss doctrine and that Agape's breach of warranty claims are barred by Oklahoma law.

15

dismissed.[7]

It is so ordered this 28th day of June, 2011.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma

---

[7] Pratt & Whitney Canada and Sundstrand have filed a Third Party Complaint (Dkt. No. 50) against Kansas Aviation for contribution. The Court presumes this third party complaint is rendered moot based on the dismissals herein; consequently, Pratt & Whitney Canada and Sundstrand are given until July 7, 2011, to either dismiss the third party complaint or submit a document to the Court explaining why such third party complaint should remain pending.